

**IT IS ORDERED as set forth below:**

**Date:  October 28, 2019**

_____

**W. Homer Drake**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| In The Matter of: | : | **CASE NUMBER** |
| | : | |
| Orchard Hills Baptist Church, Inc., | : | Chapter 11 No. |
| | : | 19-10897-WHD |
| _____ | : | |
| | : | |
| SummitBridge National Investments | : | |
| VI, LLC, Successor in interest to | : | |
| Branch Banking and Trust Co., | : | |
|       Movant, | : | |
|           v. | : | |
| | : | |
| Orchard Hills Baptist Church, Inc., | : | |
|       Respondent. | : | |
| | : | |

## <u>ORDER</u>

Before the Court are two motions: (1) SummitBridge National Investments

VI, LLC's ("SBN") Amended Motion for Relief from the Automatic Stay, or, in the

alternative, to Compel Adequate Protection under the Security Agreement, (Doc.

52), and (2) SBN's Motion to Dismiss, (Doc. 16), filed in the above-captioned bankruptcy proceeding of Orchard Hills Baptist Church Inc. ("Debtor").  These matters constitute core proceedings, over which this Court has subject matter jurisdiction.  *See* 28 U.S.C. § 157(b)(2)(A), (G); § 1334.

These motions came before the Court for hearing on July 30th and 31st, 2019. At the conclusion of the hearing, the Court took the matters under advisement and invited the parties to submit supplemental briefs and findings of fact.

As a matter of efficiency, the Court will address both of SBN's motions in this order, for the same facts are relevant to both.  The issues that must be addressed are threefold.   First, whether the applicable facts warrant dismissal either for bad faith or for cause as set forth in 11 U.S.C. § 1112(b)(4)(A).  Second, whether a prepetition waiver of the right to oppose stay relief is enforceable against the Debtor.  Third whether SBN is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) or (2).

Upon consideration of the pleadings, presentations of counsel, evidence, and any judicially noted facts, the Court holds that (1) SBN's Motion to Dismiss is Denied, and (2) SBN's Motion for Relief from the Automatic Stay is Granted.  The

following constitutes the Court's findings of fact and conclusions of law in support of this ruling. *See* Fed. R. Bankr. P. 7052 and 9014.[1]

## Findings of Fact

On May 7, 2019, the Debtor filed its voluntary petition for bankruptcy relief under Chapter 11. The Debtor operates a Baptist church, which was established during the 1950's and was originally located in College Park, Georgia. Stacy Thomas is the pastor of the Debtor and has been since 1983.

Around 1994, the Debtor relocated from College Park to Newnan, Georgia. In April 2007, the Debtor borrowed $3,800,000 from Branch Banking & Trust ("BB&T") pursuant to a certain promissory note for the purpose of building the Debtor's current facility located at 171 Gordon Road in Newnan (the "Property"). BB&T obtained a security interest in the Property, along with other assets of the Debtor. BB&T also obtained a personal guaranty on the note from Stan Thomas, a well-known real estate developer and the brother of Stacy Thomas. The loan had an initial maturity date of March 27, 2010.

The loan was renegotiated and modified several times up and through April 2016, at which time the outstanding balance on the loan was $2,749,000. Additional negotiations and modifications followed until August 2016, at which

---

[1] Unless otherwise specified, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure 1001-9037.

time the Debtor and BB&T entered into a Forbearance Agreement.  By this time, the outstanding balance on the loan was approximately $2,600,000.[2]

Despite not receiving any payments from the Debtor after January 2017, BB&T did not attempt to enforce any of its collection remedies, choosing instead to seek a consensual workout with the Debtor.  As a result, no agreement between BB&T and the Debtor was in effect from January 2017 to September 2018.  During this time, a small group of individuals, including members of the Debtor, offered $1,400,000 to purchase the debt from BB&T.  BB&T indicated that this was acceptable and gave the Debtor up until September 30, 2018 to acquire the funds. On September 27, 2018, Stan Thomas, having secured the funds, contacted BB&T, but was informed by BB&T that it had sold the debt to SBN.

On October 5, 2018, SBN sent its initial demand letter to the Debtor, and, subsequently, began discussions concerning repayment of the debt with Stan Thomas, who was negotiating on behalf of the Debtor.  Ultimately, on February 28, 2019, the Debtor and SBN entered into a Forbearance Agreement ("Agreement"). (Exh. S-5).   Per the terms of the Agreement, the Debtor would pay $100,000 per month, starting in March 2019 and ending in August 2019, with a final lump sum

---

[2] Of the approximately $500,000 in loan payments made in 2016, Stan Thomas personally paid $300,000.

payment due in December 2019.  (*Id.*).  The Agreement also contains Section 16(e)

("Waiver"), which provides the following:

> "Notwithstanding anything to the contrary contained herein,
> Obligors agree that, in the event that a petition for relief is filed
> under the Bankruptcy Code by or against Obligors, they will
> not oppose any motion or application filed by the Lender
> requesting immediate relief from the automatic stay by 11
> U.S.C. § 362 to permit Lender to exercise its rights and
> remedies as a secured party under the Loan and Collateral
> Documents."

(*Id.*).

The Debtor was unable to make the first required payment; consequently,

SBN moved to foreclose on the Property.  The foreclosure sale was noticed for

May 7, 2019, but did not occur because the Debtor filed its Chapter 11 petition on

the foreclosure date.

## Discussion

A. Motion to Dismiss

SBN asserts that dismissal is appropriate for two reasons.  First, it contends

that this is a bad faith filing on the part of the Debtor.  Second, it asserts that cause

for dismissal exists due to a "substantial and continuing loss to or diminution of the

estate and the absence of a reasonable likelihood of rehabilitation."  Code §

1112(b)(4)(A).

Section 1112(b)(1) provides that the Court, on request of a party in interest, and after notice and a hearing, shall for "cause" convert or a dismiss case, whichever is in the best interest of creditors and the estate. Code § 1112(b)(1). In seeking dismissal under § 1112(b), the movant bears the initial burden of proof by a preponderance of the evidence. *In re Global Emergency Res., LLC*, 563 B.R. 76, 79 (Bankr. N.D. Ga. 2016).

I. Bad Faith Dismissal

The Eleventh Circuit Court of Appeals has long recognized that a debtor's lack of good faith constitutes cause for dismissal of a case pursuant to § 1112(b)(1). *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984). A determination of bad faith is a question of fact and must be made on a case-by-case basis. *In re SB Properties, Inc.,* 185 B.R. 198, 204 (E.D. Pa. 1995).

There is no particular test for determining whether a debtor has filed a petition in bad faith, but, in finding such, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization process. *In re Phoenix Piccadilly, Ltd.,* 849 F.2d at 1394. In making this determination, courts have considered the following factors:

(1) Whether the debtor has few or no unsecured creditors;

(2) Whether there has been a previous bankruptcy petition by the debtor or a related entity;

(3) Whether the pre-petition conduct of the debtor has been improper;

(4) Whether the petition effectively allows the debtor to evade court orders;

(5) Whether there are few debts to non-moving creditors;

(6) Whether the petition was filed on the eve of foreclosure;

(7) Whether the foreclosed property is the sole or major asset of the debtor;

(8) Whether the debtor has no ongoing business or employees;

(9) Whether there is no possibility of reorganization;

(10) Whether the debtor's income is sufficient to operate;

(11) Whether there was no pressure from non-moving creditors;

(12) Whether reorganization essentially involves the resolution of a two-party dispute;

(13) Whether a corporate debtor was formed and received title to its major assets immediately before the petition; and

(14) Whether the debtor filed solely to create the automatic stay.

*In re SB Properties, Inc.,* 185 B.R. at 205.  This list is not exhaustive, and "courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'"  *Phoenix Piccadilly*, 849 F.2d at 1394 (citing *Albany Partners*, 749 F.2d at 674).  Moreover, a mechanical application of these factors is inappropriate, as the focus of the inquiry should be the presence or absence of the honest intention of the debtor.  *See In re Park Forest Dev. Corp.*,

197 B.R. 388, 393-94 (Bankr. N.D. Ga. 1996). A court has broad discretion to evaluate the totality of the circumstances in each case and to determine whether those circumstances indicate that a petition was filed in bad faith. *In re Southside Church of Christ of Jacksonville, Inc.,* 572 B.R. 384, 388 (Bankr. M.D. Fla. 2017)

It is undisputed that several of the aforementioned factors favor SBN in this case. At its essence, this matter is a two-party dispute, centering around the primary asset of the Debtor. Also, SBN is the major, if not sole, secured creditor, and is the only party applying pressure on the Debtor. The Debtor has few unsecured creditors and owes limited debts to non-moving creditors. Moreover, the Debtor filed its petition for relief on the day of a scheduled foreclosure sale.

On the other hand, several factors are either absent or favor the Debtor. First, this is the Debtor's first filing. Second, and more importantly, there has been no allegation of improper pre-petition conduct on the part of the Debtor. Finally, while it is true that the Debtor's filing did create the automatic stay, and despite SBN's assertion to the contrary, this in and of itself is not evidence of bad faith. *See In re Southside Church of Christ of Jacksonville, Inc.,* 572 B.R. at 389 (stating that the protection offered by the stay would be meaningless if a court were to consider that every bankruptcy filed for the purpose of seeking its protection constituted indicia of bad faith).

The Court, considering the totality of the circumstances and the aforementioned factors, does not find that any one party is principally favored by the facts before the Court.  Consequently, the Court, aware that the focus of this inquiry is the presence or absence of the honest intention of the Debtor, is reluctant to find that this is a bad faith filing, especially considering that this is the Debtor's first bankruptcy filing, coupled with the fact that there have been no accusations of improper conduct on the part of the Debtor, aside from its inability to meet its financial obligations.  Thus, the Court concludes that the instant case was not filed in bad faith.

## II. Dismissal under § 1112(b)(4)(A)

SBN also seeks dismissal pursuant to § 1112(b)(4)(A).  This section provides that cause for dismissal exists "due to a continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  Code § 1112(b)(4)(A).  This is a two-fold inquiry.  First, there must be a substantial or continuing loss to or diminution of the estate.  Second, if the first inquiry is satisfied, then there must be an absence of a reasonable likelihood of rehabilitation. *In re Global Emergency Res., LLC,* 563 B.R. at 80 (citing *In re Vallambrosa Holdings*, LLC, 419 B.R. 81, 88 (Bankr. S.D. Ga. 2009)).

To satisfy the first inquiry, the movant must show that the debtor, since the commencement of the case, is operating with declining asset values, or, in the

alternative, continues to experience negative cash flow.  *In re Gateway Solutions, Inc.,* 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007); *see In re Vallambrosa Holdings, LLC,* 419 B.R. 81, 89 (Bankr. S.D. Ga. 2009) (finding "continuing loss to or diminution of the estate" where debtor ceased business operations, would soon have no equity in its property, and had to pay continuing administrative expenses); *see also In re Schriok Const. Inc.,* 167 B.R. 569, 575 (Bankr. D.N.D. 1994) ("[t]his element can be satisfied by demonstrating that the debtor incurred continuing losses or maintained a negative cash flow position after the entry of the order for relief.")

Here, the Court finds that SBN has not met its initial burden of proof by failing to show that the Debtor is operating with declining asset values <u>since the commencement of the case</u>.  While extensive evidence regarding the Debtor's financial struggles over the past several years has been presented, including evidence that the Debtor operated at a net loss for several years prior to the filing of the petition, the Court does not find sufficient evidence to conclude that there is a continuing loss to or diminution of the estate as of the commencement of the case. Moreover, while it is true that the Debtor has not made a payment on the debt since 2017, the Court does not find that this fact alone satisfies SBN's burden, in light of the inquiry's post-petition focus.

As the first inquiry is not satisfied, discussion of the second inquiry is

unnecessary.  Therefore, since neither dismissal for bad faith pursuant to §

1112(b)(1) nor dismissal pursuant to § 1112(b)(4)(A) is appropriate, the Court finds

that SBN's Motion to Dismiss should be denied.

B.  The Waiver and SBN's Motion for Relief

SBN seeks relief from the automatic stay pursuant to § 362(d)(1) and §

362(d)(2).  However, the enforceability of the Waiver contained in the Agreement

is central to the issue of stay relief, and, consequently, must be addressed at the

outset.

I.  Enforceability of the Waiver

Section 16(e) of the Agreement provides:

> "Notwithstanding anything to the contrary contained herein,
> Obligors agree that, in the event that a petition for relief is filed
> under the Bankruptcy Code by or against Obligors, they will
> not oppose any motion or application filed by the Lender
> requesting immediate relief from the automatic stay by 11
> U.S.C. § 362 to permit Lender to exercise its rights and
> remedies as a secured party under the Loan and Collateral
> Documents."

(Exh. S-5) (emphasis added).  As an initial matter, the Court finds that the plain

language of the Waiver provides that the Debtor would not oppose SBN's motion

for relief from the automatic stay.  The Waiver does not automatically entitle SBN

to relief from the stay, but rather the ability to seek unopposed such relief.

Pre-petition forbearance agreements waiving a debtor's right to contest stay relief are enforceable, but they are not per se enforceable, nor are they self-executing. *In re Alexander SRP Apart., LLC*, 2012 WL 1910088, at *6 (Bankr. S.D. Ga. April 20, 2012); *In re Club Tower L.P.,* 138 B.R. 307 (Bankr. N.D. Ga. 1991). Generally, such a provision is enforceable, if it is not contained within the initial loan documents. *In re Alexander SRP Apart., LLC*, 2012 WL 1910088, at *6.

"[T]he most compelling reason for [the] enforcement of [a] forbearance agreement is to further the public policy in favor of encouraging out of court restructuring and settlements." *In re Cheeks,* 167 B.R. 817, 819 (Bankr. D. S.C. 1994). Policy arguments in favor of enforcing such provisions are strongest in single asset real estate cases. *In re Trans World Airlines, Inc.,* 261 B.R. 103, 116 (Bankr. D. Del. 2001). This case is analogous to a single asset real estate case, as the Property is the major asset of the Debtor and the primary, if not sole, focus of the instant case. Consequently, the Court recognizes that public policy favors enforcement of the Waiver. The burden rests upon the Debtor to show that the Waiver should not be enforced. *In re Frye,* 320 B.R. 786, 791 (Bankr. D. Vt. 2005).

As there is no uniform test, courts have considered various factors in determining whether a pre-petition waiver of the automatic stay should be

enforced. *Compare Frye*, 320 B.R. at 790–91 (enumerating ten factors important in determining whether a waiver should be enforced) *with Southwest Ga. Bank v. Desai (In re Desai)*, 282 B.R. 527, 532 (Bankr. M.D. Ga. 2002) (delineating a four-factor test). Ultimately, the foundational consideration is whether the balance of the equities favors enforcement. In other words, whether "appropriate circumstances" exist that warrant enforcement of the waiver. *See In re Alexander SRP Apart., LLC,* 2012 WL 1910088, at *6.

Bankruptcy courts within Georgia have applied the four-factor test set forth by Judge Laney in *In re Desai*. *See In re Alexander SRP Apart., LLC*, 2012 WL 1910088, at *6 (analyzing collective case law on the issue and settling upon the *Desai* factors). Those factors are:

> (1) the sophistication of the party making the waiver;
>
> (2) the consideration for the waiver, including the creditor's risk and length of time the waiver covers;
>
> (3) whether other parties would be affected by the waiver, including unsecured creditors and junior lienholders; and
>
> (4) the feasibility of the debtor's plan.

*In re* Desai, 282 B.R. at 532. The Court adopts the *Desai* factors as the guiding framework in its consideration of this matter.

### a. Sophistication of the Debtor

The Debtor asserts that Stacy Thomas, as the individual who executed the Agreement on behalf of the Debtor, is not a sophisticated party, and that the Debtor

was unaware of the Waiver's existence within the Agreement. The Court finds

little merit in either of these arguments. First, while it is true that Stacy Thomas

has relatively little real estate finance experience, the Court cannot ignore the fact

that the Debtor's Finance Committee was sufficiently sophisticated.[3] The Finance

Committee, comprised of local businessman, was responsible for the financial

decisions of the Debtor, and, importantly, negotiated the Agreement with SBN.

Ultimately, the Finance Committee, with Stan Thomas as its head, directed Stacy

Thomas to sign the Agreement on behalf of the Debtor.

It is also undisputed that Stan Thomas, who served as the Head of the

Finance Committee and was the driving force behind the Debtor's efforts to secure

the Agreement, was the only point of contact between SBN and the Debtor during

negotiations concerning the Agreement. (Day One Transcript; P. 52: Lines 18-20).

Stan Thomas is a commercial real estate developer who has owned and managed

numerous, substantial commercial real estate projects throughout the country.

According to his testimony, he has negotiated forbearances and restructurings of

billions of dollars' worth of commercial notes secured by real estate.[4] Due to his

---

[3] At the hearing, the Debtor appears to have conceded this fact, when its counsel
stated, "I think, based on the testimony, I'm not going to argue the point about
sophistication." (Day Two Transcript; P. 134: Lines 14-16).
[4] The Court would be remiss if it did not also mention that many of Stan Thomas's
businesses have filed petitions of reorganization in the Newnan Division of the
Northern District of Georgia.

vast business dealings and experience, he employs two in-house attorneys that aid in the review of financial agreements.  There is no question that Stan Thomas, who had sole control over the negotiations of the Agreement, is a sophisticated party.

Second, the Court lends little credence to the Debtor's argument that it did not know that the Waiver was contained within the Agreement, and that it would not have signed had it known.  Stan Thomas, as the sole negotiator on behalf of the Debtor, and despite employing two attorneys for the purpose of reviewing such documents, failed to review or have his attorneys review the Agreement before directing the Debtor to sign it.  According to his testimony, this failure to review the document was a deviation from his consistent practice of having his lawyers review every loan document that he signs.  (Day Two Transcript; P. 134: Lines 14-16).  He also did not ask for additional time to review the Agreement.  Since the Debtor does not assert fraud or mutual mistake, its failure to read a contract does not render it unenforceable.  *Pro Premium Finance Co. v. Premium Finance Service Co., LLC*, 2016 U.S. Dist. LEXIS 188261; *Haynie v. A&H Camper Sales Inc.,* 132 Ga. App. 509 (1974).

b. Adequate Consideration for the Waiver

Per the Agreement's terms, SBN agreed to forbear on its available remedies for a total of ten (10) months, contingent upon the Debtor's satisfaction of its contractual obligations.  The Debtor agreed to make six monthly payments in the

amount of $100,000 each, beginning in March 2019 and ending in August 2019, with a final balloon payment due in December 2019, approximately four (4) months after the final monthly payment. The Debtor, however, failed to tender the first payment when it came due; consequently, it breached the agreement after the first month.

Despite the Agreement's terms of ten (10) months of forbearance, the Debtor asserts that, due to the Debtor's default, SBN only provided the Debtor concessions for one (1) month. Essentially, the Debtor submits that the Court's analysis of SBN's consideration should depend upon what was actually given up instead of what was promised. Further, the Debtor asserts that it had discussed the effects of a bankruptcy petition filing with SBN prior to signing the Agreement, and, consequently, SBN's knowledge of this fact negates any consideration for the Waiver.

Despite the Debtor's proffers, the Court finds that SBN offered adequate consideration for the waiver, and that this factor favors SBN. The focus of this analysis is not on what was actually given up, but on what was bargained for at the time of contracting. *Pitts Truck Air, Inc. v. Mack Trucks, Inc.*, 173 Ga. App. 801 (1985) (stating that the adequacy of the consideration of a contract is determined by

the facts and conditions existing at the time the contract was made).[5]  As a result,

SBN, at the time of contracting, gave up the right to foreclose on the Property for

ten (10) months.  The Court finds that this is adequate consideration, given the

Debtor's two-year history of non-payment on the debt.  *See In re Club Tower, L.P.,*

138 B.R. 307, 312 (Bankr. N.D. Ga. 1991) (three-month waiver was adequate

consideration).

　　　The Court also finds that the Debtor's contention regarding SBN's

knowledge or anticipation of the Debtor's bankruptcy filing is irrelevant in regards

to whether consideration was adequate.  *See generally In re Shady Grove,* 216 B.R.

386, 391 (Bankr. M.D. 1998) (finding that a lender's doubts as to the enforceability

of a pre-petition waiver is not a material factor in the Court's analysis of adequate

consideration).[6]   What is relevant is that the Debtor, being sophisticated, agreed to

the waiver, the enforcement of which is now being challenged before the Court.  *Id.*

---

[5] Interestingly, the plaintiff in *Pitts Truck Air, Inc. v. Mack Trucks, Inc,* asserted an
analogous argument to that made by the Debtor in this case.  There, the plaintiff
argued that the considerations related to the parties' forbearance agreement failed
once the defendant brought its action against them.  173 Ga. at 803.  The Georgia
Court of Appeals found "no merit" in this argument because the defendant brought
its suit against the plaintiff once the plaintiff defaulted on its obligations under the
agreement.  *Id.*

[6] The Debtor, through this argument, seeks to penalize SBN for its knowledge that
the Debtor was considering filing bankruptcy prior to entry of the Agreement.
However, to do so would, in the Court's mind, be inequitable, as both parties
possessed the same knowledge concerning a possible petition filing, and both
parties willingly entered into the Agreement.

The Court is not inclined to second guess a party's decision to enter into a consensual agreement, especially in a situation in which the party may have concerns as to its ability to fulfill its obligations under such an agreement.

<u>c.  Will Other Parties be Affected by Enforcement of the Waiver</u>

The Court finds that no other parties will be harmed by the enforcement of the Waiver.  No parties, besides the Debtor, have objected to the relief sought by SBN, nor has there been any action in the case by other creditors.  The Debtor vaguely asserts that other creditors will be harmed, but fails to provide the Court with sufficient information as to these creditors' identities.  The Court notes that the junior secured claim of J&A Finance, LLC, in the amount of $182,782, if valid, constitutes a junior claim against the Property.  The Debtor disputes this claim, but also states that allowing SBN to foreclose could negatively impact J&A Finance. However, the Court does not find that the presence of this one disputed claim is enough to show that enforcement of the Waiver is not appropriate, especially considering that the Debtor has few other creditors, all of whom have been silent in the case.

The Debtor's primary argument is that the Waiver should not be enforced because of the negative effect its enforcement will have on its employees, its operations, and its congregation.  This argument, while emotional, is not persuasive.  All corporate debtors in reorganization proceedings will have

employees, customers, tenants, etc. that could potentially be affected by a foreclosure sale. If the best interests of these parties were considered a material factor, courts would not enforce pre-petition waivers of the automatic stay, as all corporate debtors have some degree of contact with non-creditor entities. *See generally In re Club Tower, L.P.,* 138 B.R. at 307 (upholding a pre-petition waiver against a debtor that operated an apartment building). Consequently, the Court finds that this factor favors enforcement of the Waiver.

<u>d. Whether the Debtor can propose a feasible plan</u>

The Debtor submitted its proposed plan on July 29, 2018. (Doc. 49). The Court has serious concerns regarding its financial feasibility. *See In re Shady Grove,* 216 B.R. at 393 (considering the financial feasibility of a debtor's proposed plan). Since 2015, the Debtor's revenues have steadily declined. (Ex. S-13 and S-14). In 2017, the Debtor operated with a net loss of $22,686.54, all during a time when it did not make any payments towards its debt. (Ex. S-13). In 2018, the Debtor managed to operate with a surplus of $41,815.50. (*Id.*). However, the Debtor still made no payments on its debt. In 2019, the Debtor is once again operating with a deficit of $5,050.48 as of the date of the hearing, while still making no payments on the debt. (*Id.*).

The Debtor's proposed budget, and, consequently, its ability to fund its plan, hinges upon its ability to generate more than $154,000 than it did in the year 2018.

In order to accomplish this, the Debtor relies on the religious fervor of its congregation, including the presence of several highly affluent donors, who, the Debtor believes, will provide whatever funds are necessary to achieve a successful reorganization.  However, this optimistic testimony is speculative and not supported by evidence.  *In re Fort Knox Mini Warehouse, Inc.,* 2002 Bankr. LEXIS 909, 2002 WL 1842452, at *6 (Bankr. N.D. Iowa, July 31, 2002) (a debtor's ability to fund a case must be based on actual evidence and must not be speculative).

The Debtor presents no evidence as to how the fervor of its congregation will provide funds materially significant to aid in the funding of the proposed plan.  Additionally, it provides no evidence that supports the existence of the aforementioned affluent donors.  Moreover, the Debtor's dependence on the contributions of Stan Thomas is concerning in its own right, as Stan Thomas was not able to contribute any meaningful payment toward the debt after 2017.  The Debtor's reliance on these sources raises feasibility concerns, since these were the same sources that provided the Debtor's income prior to its filing for bankruptcy.

Considering the above factors, the Court finds that the Waiver is enforceable.  The consequence of such a finding is that SBN's motion for relief should be deemed unopposed.

Notwithstanding, the Debtor submits that enforcement of the Waiver would not be appropriate or equitable because SBN waived enforceability by inviting the

Debtor to participate in litigation surrounding its Motion for Relief. The Debtor

provides no case authority in support of this position, and the Court finds little

merit in this argument. The Code and Rules of Bankruptcy Procedure require that

requests for relief from the automatic stay must first be properly noticed and then

heard by the Court. *See* Code § 362(d); Rule 4001. SBN's compliance with this

requirement through the service of its Motion on the Debtor does not constitute a

waiver of its rights under the Agreement.

Further, the Court does not find a compelling equitable reason to forego the

enforcement of the Waiver. The Debtor was provided ample opportunity to contest

the enforceability of the Waiver, and it vigorously did so. Accordingly, the Debtor

will suffer no actual prejudice. In fact, considering that it takes less time to

adjudicate an unopposed motion, compared to one that is highly contested, it is

arguable that the Debtor, through its opposition and the resulting breach of the

Waiver, has benefitted in this situation by having the protection of the automatic

stay extended to encompass the time spent litigating SBN's Motion for Relief.

Therefore, as the Waiver is enforceable, the Court disregards the Debtor's

objections and considers SBN's Motion for Relief unopposed.

C.  Relief From the Automatic Stay

I. Relief Pursuant to § 362(d)(1)

SBN requests relief from the stay pursuant to § 362(d)(1), which provides

that the bankruptcy court shall grant relief from the automatic stay, "such as by

terminating, annulling, modifying, or conditioning such stay," on "request of a

party in interest . . . for cause, including the lack of adequate protection of an

interest in property of such party in interest." Code § 362(d)(1) (emphasis added).

The term "cause" is not defined in § 362(d)(1) or elsewhere in the Bankruptcy

Code. *See Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997)

("Section 362(d)(1) does not define 'cause,' leaving courts to consider what

constitutes cause based on the totality of the circumstances in each particular

case.").

SBN asserts that the existence of the prepetition waiver constitutes "cause"

as contemplated under § 362(d)(1).  Some courts addressing prepetition waivers of

automatic stay protection have found that the existence of such a waiver, if

enforceable, constitutes cause for relief from the stay.  *See In re Alexander SRP*

*Apartments*, 2012 WL 1910088, at \*6.  However, as discussed supra, the language

contained in the Waiver does not entitle SBN to relief, but merely the ability to

seek such relief unopposed.   *Compare Id*.[7]  As such, the enforceability of the

Waiver alone does not constitute cause pursuant to § 362(d)(1).

---

[7] In *In re Alexander*, the court addressed a prepetition waiver that stated, "Lender
<u>will thereupon be entitled to relief from any automatic stay imposed</u>…and Obligors
hereby <u>waive the benefits of such automatic stay</u> and consent and agree to raise no

II.  Relief From the Stay Pursuant to § 362(d)(2)

SBN also seeks relief from the automatic stay pursuant to § 362(d)(2).  This

section provides that the Court shall grant relief from the stay "if (A) the debtor

does not have equity in such property, and (B) such property is not necessary to an

effective reorganization."  Code § 362(d)(2).  Once a movant under this section

establishes that the debtor has no equity in the collateral, it is the burden of the

debtor to establish that it is necessary to an effective reorganization.  *See* Code §

362(g).

SBN asserts that the Debtor has no equity in the Property, and, in support of

this assertion, it relies upon the testimony of its expert, Michael Smith of the

Buckhead Advisory Group.  During the hearings on these motions, Mr. Smith spent

a considerable amount of time testifying as to the value of the Property and the

methods employed that enabled him to arrive at such a valuation.  He ultimately

concluded that the Property holds a fair market value of $2,500,000.

The Court finds that not only is Mr. Smith qualified to testify as an expert on

the valuation of the Property, but also that his testimony is persuasive.  Mr. Smith

has completed more than three hundred (300) appraisals of churches; his analysis

---

objection to such relief.  2012 WL 1910088, at *6 (emphasis added).  Here, the
waiver simply states that "Obligors agree that, in the event that a petition for relief
is filed under the Bankruptcy Code by or against Obligors, they will not oppose
any motion or application filed by the Lender requesting immediate relief from the
automatic stay."  (Ex. S-5) (emphasis added).

complied with the approaches advocated by leading authorities on the appraisal of religious facilities, and it included valuation comparisons of similar religious facilities within a relevant geographical area. As a result, the Court adopts Mr. Smith's valuation of the Property.

It is undisputed that the Debtor owes $2,747,936 to SBN. Consequently, as the Debtor has no equity in the Property, SBN has satisfied its burden pursuant to §362(d)(2). The burden now rests upon the Debtor to show that the Property is necessary to an effective reorganization. However, as SBN's Motion is unopposed, the Debtor has failed to satisfy its burden. *See* Code §§'s 362(d)(2), (g). Thus, SBN is entitled to relief from the stay pursuant to § 362(d)(2).

## Conclusion

Therefore, in accordance with the foregoing, it is hereby

**ORDERED** that SBN's Motion to Dismiss is DENIED. It is **FURTHER ORDERED** that SBN's Motion for Relief from the Automatic Stay is GRANTED.

The Clerk is **DIRECTED** to serve a copy of this Order on the Debtor, Debtor's counsel, SummitBridge National Investments VI, LLC, SummitBridge National Investments VI, LLC's counsel, the United States Trustee, and all other parties in interest.

**END OF DOCUMENT**