**IT IS ORDERED as set forth below:**



Date:  April 7, 2020

_____

W. Homer Drake
U.S. Bankruptcy Court Judge

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| In The Matter of: | : | CASE NUMBER |
| --- | --- | --- |
|  | : |  |
| Orchard Hills Baptist Church, Inc., | : | Chapter 11 No. |
|  | : | 19-10897-WHD |
| _____ | : |  |
|  | : |  |
| Orchard Hills Baptist Church, Inc., | : |  |
|     Movant, | : |  |
|        v. | : |  |
| SummitBridge National Investments | : |  |
| VI, LLC, Successor in interest to | : |  |
| Branch Banking and Trust Co., | : |  |
|     Respondent. | : |  |

## ORDER

Before the Court is Orchard Hills Baptist Church, Inc.'s ("Debtor") Motion for Reconsideration ("Motion"), (Doc. 66), of the Court's Order ("Order"), (Doc. 63), granting SummitBridge National Investments VI, LLC ("SBN") relief from the automatic stay.  SBN opposes the Motion.  (Doc. 79).  Upon review of the record

and the parties' pleadings, the Court finds that it erred in granting SBN relief from the stay under § 362(d)(2) due to SBN's failure to satisfy its burden pursuant to § 362(g), and that, as a result, a subsequent hearing is necessary in order to determine whether the Debtor has equity in the personal property subject to SBN's request for stay relief.

## Background

SBN sought relief from the automatic stay on two grounds : (1) for cause under § 362(d)(1) due, in part, to the existence of a pre-petition waiver of the right to contest a motion for stay relief ("Waiver"), and (2) pursuant to § 362(d)(2).[1]

Following an evidentiary hearing, the Court issued the Order granting SBN relief from the automatic stay. In reaching this conclusion, the Court considered several issues. First, the Court addressed whether the Waiver was enforceable against the Debtor. Upon finding that it was enforceable, the Court considered SBN's motion for relief to be unopposed.

Second, the Court considered whether SBN was entitled to relief pursuant to § 362(d)(1) or (2). The Court found that the enforceability of the Waiver alone, due to its language, did not merit granting relief under §362(d)(1). However, the Court did find that SBN was entitled to relief pursuant to § 362(d)(2) because the Debtor

---

[1] SBN also filed a separate Motion to Dismiss, (Doc. 16). The Court denied this motion in the Order.

lacked equity in the property, and the property was not necessary for an effective reorganization.

## Motion to Reconsider Standard

The Debtor filed its Motion, which is properly classified as a motion for reconsideration, pursuant to Federal Rule of Civil Procedure 59(e), made applicable in bankruptcy by Fed. R. Bankr. P. 9023. *In re Ashgrove Apts. of Dekalb County, Ltd.,* 121 B.R. 752, 757 (Bankr. S.D. Ohio 1990).

The standard applied in considering a motion to reconsider is an abuse of discretion standard that may only be satisfied through a showing of a manifest error of law or fact or newly discovered evidence. *Mincey v. Head,* 206 F.3d 1106, 1137 (11th Cir. 2000). The newly discovered evidence can be neither newly created evidence, *Biesek v. Soo Line R.R. Co.,* 440 F.3d 410, 412 (7th Cir. 2006), nor can it have been available at the time of the judgment, *Mincey,* 206 F.3d at 1137. In addition, some courts have found that the error must affect the outcome. *Greene v. U.S. Dep't of Educ. (In re Greene),* 2013 Bankr. LEXIS 1636, at *42 (Bankr. E.D. Va. Apr. 22, 2013). Simply put, "a party's mere disagreement with the Court's ruling does not warrant a Rule 59(e) motion." *Bank Meridian, N.A. v. Ultra Holdings, LLC (In re Earth Structures, Inc.),* 490 B.R. 199, 215 (Bankr. D.S.C. 2013).

Ultimately, even if errors have been committed, if the issues are at least arguable, such errors do not constitute the type of clear and obvious error that warrants Rule 59(e) relief. *In re Ardis,* 2017 Bankr. LEXIS 2625, *3-4 (Bankr. N.D. Fla. Jan. 6, 2017). As a result, reconsideration of an order is an extraordinary remedy, and the decision to grant such a motion is a matter within the discretion of the Court. *See* BLR 9023-1; *see also Pac Ins. Co. v. Am. Nat. Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir. 1998).

## Issues Presented

The Debtor, asserting the existence of manifest error in law or fact, presents the following issues for the Court's reconsideration:

1. In granting SBN relief from the stay,

    a. did the Court err in its consideration of the Debtor's expert witness's testimony as to the value of the real property?

    b. did the Court, in determining the enforceability of the Waiver, err in its finding as to the Debtor's employees and congregation?

    c. did the Court apply the appropriate standard when considering the Debtor's prospects of reorganization?

    d. did the Court err in its holding that SBN satisfied its burden under § 362(d)(2) as to the Debtor's equity in the property subject to the relief sought?

2. Did the Court misapprehend the Debtor's waiver argument?

The Court also reconsiders whether its determination in regard to "cause" under § 362(d)(1) was sufficient given the facts of the case.

**Discussion**

1. <u>The Court's Granting of Relief from the Stay</u>

At the outset, to the extent the Debtor asserts that the Court's decision to treat SBN's motion for relief as unopposed is a manifest error of law, the Court finds no merit in this assertion. If a pre-petition waiver of the right to oppose stay relief is enforceable, it is within the Court's discretion what weight to give a debtor's objection to a creditor's stay relief motion. *See In re Cheeks*, 167 B.R. 817, 819 (Bankr. D.S.C. 1994). Here, the Debtor waived its right to oppose SBN's stay relief motion. Thus, the Court lent no weight to the Debtor's objection as "it conflict[ed] with and [was] in derogation" of the Waiver's express language. *Id.*

The Court turns now to the Debtor's assertions and addresses each in turn.

a. <u>Did the Court err in its consideration of the Debtor's expert witness's testimony as to the value of the real property?</u>

The Debtor asserts that the Court erred if it disregarded the testimony of the Debtor's expert as to the value of the real property. This issue does not merit reconsideration because the Court considered this testimony. Notwithstanding, the Court, recognizing that the Order is unclear on this issue, clarifies its decision.

The Court considered the testimony of both parties' experts, Mr. Williams for the Debtor and Mr. Smith for SBN. While both experts provided professional and fact intensive analysis, the Court found Mr. Smith's valuation of the property more reliable. The Court based this decision on two significant facts.

First, Mr. Smith's experience in valuing properties similar to the real property at issue (a religious facility) is vastly superior to that of Mr. Williams. Mr. Smith testified to having conducted more than 300 appraisals of similar properties. Mr. Williams, on the other hand, testified to having conducted only 4 comparable appraisals, two of which involved appraising only certain property rights not at issue in this case.

Second, The Appraisal of Religious Facilities, recognized as the "textbook" on the appraisal of religious facilities, advocates for the use of the Sales Comparable Approach when valuing such property. While both experts recognized that the use of this approach is normally considered the standard practice, only Mr. Smith utilized this approach in his analysis. When Mr. Williams was questioned as to why he did not, he failed to convincingly explain his decision, nor did he show that the real property at issue was distinguishable to the extent that the Sales Comparable Approach was not necessary or beneficial.

> b. Did the Court, in determining the enforceability of the Waiver, err in its finding as to the Debtor's employees and congregation?

In determining whether the Waiver was enforceable against the Debtor, the Court looked at the four factors set forth in *In re Desai*, 282 B.R. 527, 532 (Bankr. M.D. Ga. 2002). The third factor is "whether other parties are affected including unsecured creditors and junior lienholders." *Id*. Addressing this factor, the Court,

*inter alia*, rejected the Debtor's argument that the Waiver should not be enforced because of the effect on the Debtor's employees and congregation.

The Debtor asserts that this finding constitutes a manifest error of law and is clearly erroneous because *Desai*'s use of "other parties" requires the Court to consider the employees and congregation, not only the creditors. The Debtor also submits that the Court's finding contradicts the adopted precedent, *In re Desai*, *In re Merridale Gardens Limited Partnership*, *In re Shady Grove*, and *In re Frye*.[2]

However, the Court finds that these assertions do not merit granting the Debtor's motion. There are several reasons for this. First, the Debtor, in essence, is requesting that the Court reconsider this issue because it does not agree with the Court's weighing and interpretation of the evidence, but it is improper to ask the Court to rethink what it has already thought through, *In re Smith*, 541 B.R. 914, 916 (Bankr. M.D. Fla. 2015). "A party's mere disagreement with the Court's ruling does not warrant a Rule 59(e) motion." *Bank Meridian, N.A.*, 490 B.R. at 215 (citation omitted).

Second, the Court is not required to adhere strictly to persuasive, non-binding judicial opinions. The decisions cited by the Debtor and the analyses

---

[2] *In re Desai,* 282 B.R. 527 (Bankr. M.D. Ga. 2002); *In re Merridale Gardens Limited Partnership*, No. 95–1–3091–PM, (Bankr. D. Md. October 19, 1995), affirmed in unpublished opinion No. S–95–3334 (D. Md. Feb. 28, 1996); *In re Shady Grove Tech Ctr. Assocs. Ltd. P'ship*, 216 B.R. 386 (Bankr. D. Md. 1998); and *In re Frye*, 320 B.R. 786 (Bankr. D. Vermont 2005).

presented therein are not binding upon the Court. Moreover, the Court, while utilizing *Desai* as the guiding framework in its consideration of the matter, did not exclusively adopt its factors.

Third, the Court's finding that consideration of the Debtor's employees and congregation was not determinative is not a manifest error of law because it is within the Court's discretion as to what weight to give a factor. *In re Frye*, 320 B.R. 786, 791 (Bankr. D. Vt. 2005) (stating the weight given to each factor will vary on a case-by-case basis and must be left to the sound discretion of the court); *see generally, e.g. In re Merridale Gardens Limited Partnership*, No. 95–1–3091–PM, (Bankr. D. Md. Oct. 19, 1995), affirmed in unpublished opinion No. S–95–3334 (D. Md. Feb. 28, 1996) (finding that the most important factor is the sophistication of the borrower followed by the concessions given, the risk incurred by the lender, and the other creditors affected); *In re Hirsch Realty, LLC*, 583 B.R. 583, 598 (Bankr. D. Mass. 2018) (finding that, given the circumstances, the most important factor to consider was the proximity in time between the date of the waiver and date of the bankruptcy filing).

Finally, assuming *arguendo* that the Court did in fact err, the consideration of the employees and congregation does not affect the outcome of the Court's decision because the Debtor did not present evidence for the Court to consider on this issue. *See Greene,* 2013 Bankr. LEXIS 1636, at *42 (finding that if the error

does not affect the outcome, then the court need not grant the motion). Here, the Debtor presented little to no evidence as to the number of employees, their responsibilities, or any perceived difficulties that these individuals will face in finding new employment. Moreover, the Court finds that the granting of stay relief does not guarantee that the Debtor's employees will be terminated or that its congregation must find a new church to attend. Prior to the Debtor's relocation to its current facility, it conducted services in a local high school. There has been nothing presented to the Court to suggest that this alternative is not again possible.

As for the Debtor's implying that the Court's in-chamber's conference with the parties prior to the hearing prevented the Debtor from submitting evidence on this point, the Court does not agree with this interpretation.

The Court's decision to conduct this conference was due, in part, to the Debtor's assertion that enforcement of the Waiver would "certainly evict an entire congregation (dozens of families) from a church that has attended services there for over a decade[,]" and it would "harm the Newnan community at large." (Doc. 44, p. 5). The Court also recognized the emotional tenor that may flavor the parties' arguments, given the inextricably emotional and religious nature of the case.

The Court's intent and desire was to remind the parties that its interest was in applying the applicable law to the facts before it, and that the parties should be

wary of presenting and relying upon generalized, emotional arguments with no real evidentiary support. So, while the Court's directive was to avoid generalized, emotional arguments, it in no way prevented the Debtor from presenting evidence as to its employees, congregation, and any arguably measurable effects that granting relief from the stay would have had.  Ultimately, the Debtor decided not to present this evidence, and, as a result, the Court will not grant the Debtor's motion on this ground.

Notwithstanding, the Court is certainly empathetic towards the situation in which the Debtor's congregation currently finds itself due to the Debtor's filing, and it does not enjoy having to render decisions that potentially bestow emotional burdens upon the members of the congregation.  However, this alone cannot be a basis for relief, as the Court must ground its decision in the evidence.

c. <u>Did the Court apply the appropriate standard when considering the Debtor's prospects of reorganization?</u>

The Debtor maintains that the Court applied an inappropriately strict standard when assessing the feasibility of the Debtor's proposed plan, and that the Court "misapprehended or overlooked" critical feasibility evidence.  Ultimately, the Debtor submits that its filing of a 100% plan well before the conclusion of the exclusivity period should heavily favor the Debtor.  Upon reconsideration, the Court finds that, even if it erred in this respect, it does not merit granting the

Debtor's motion because it would not change the outcome. *See Greene,* 2013 Bankr. LEXIS 1636, at *42.

In the Order, the Court addressed the Debtor's prospects of reorganization as the fourth and final factor in determining whether the Waiver should be enforced against the Debtor. (Doc. 63, p. 19). The Court ultimately found that, due to its concerns about the Debtor's financial condition, this factor weighed in favor of SBN and enforcement of the Waiver. It is important to note, however, that the Court did not analyze the Debtor's prospects of reorganization pursuant to § 362(d)(2) because the Court deemed SBN's motion for relief to be unopposed, as a result of the Court's ultimately holding that the Waiver was enforceable. (*Id.*, p. 24).

The Court recognizes that the Order does not specify which standard was applied when assessing the Debtor's prospects of reorganization. As a result, and upon reconsideration, the Court holds that the appropriate standard to be applied in determining a debtor's prospects of reorganization, as it pertains to whether a pre-petition waiver of stay protection should be enforced, is the same standard applied to § 362(d)(2) motions. Pursuant to § 362(d)(2), a debtor must show that the property is essential for an effective reorganization that is in prospect. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 376 (1988). There must be a reasonable possibility of a successful reorganization within a

reasonable time. *Id.* This burden rests upon a sliding scale, with a less detailed showing being required during the initial stages of the case when a debtor has the exclusive right to propose a plan. *Id.*

In light of the foregoing, it is possible that the Court imposed an overly strict standard upon the Debtor, and that the Debtor satisfied its burden under the appropriate, less stringent standard. However, this would not have changed the outcome because the Court did not consider the Debtor's prospects of reorganization in the context of § 362(d)(2), but as a factor in determining whether the Waiver should be enforced. As the weight accorded to each factor considered falls within the discretion of the Court, *In re Frye*, 320 B.R. 791, even if this factor favors the Debtor, the remaining factors considered still favor SBN. Thus, the Court would have come to the same conclusion.

> d. <u>Did the Court err in its holding that SBN satisfied its burden of proof as to the Debtor's equity in property subject to the stay relief sought?</u>

The Debtor asserts that SBN did not satisfy its burden under § 362(d)(2) because it failed to prove that the Debtor did not have equity in the personal property subject to SBN's motion for relief. In response, SBN contends that it should be permitted to rely on the valuations provided in the Debtor's schedules in lieu of presenting evidence, and that the Court can take judicial notice of these values. If it takes such judicial notice, SBN asserts that the Court's determination is correct because the scheduled values, in combination with the value of the

Debtor's real property, do not exceed the obligation owed to SBN. Upon reconsideration, the Court finds that SBN did not satisfy its burden, and, as a result, the Court's granting of relief pursuant to § 362(d)(2) was in error.

The party seeking relief from the stay pursuant to § 362(d)(2) bears the burden of proof regarding the debtor's equity in the property. § 362(g). SBN sought relief from the stay as to not only the Debtor's real property, but also its personal property. While the Court deemed SBN's motion to be unopposed, this did not relieve SBN of its burden. At the hearing, SBN submitted little to no evidence concerning the Debtor's equity in its personal property, nor did it request that the Court take judicial of the schedules for that purpose.

In addition, and significantly, it appears to the Court that there is now some confusion between the parties as to what personal property is subject to SBN's motion for relief. SBN's motion set forth a detailed list of property, which appeared to be all the Debtor's real and personal property, subject to its stay relief motion. Now, through its Response to the Debtor's Motion, it states that there are certain pieces of personal property now excluded from the relief sought.

Therefore, in accordance with the foregoing, the Court shall grant the Debtor's motion on this issue, and shall conduct an evidentiary hearing as to the value of the Debtor's personal property.

2. <u>Did the Court misunderstand the Debtor's Waiver Argument?</u>

The Debtor submits that the Court's finding that other parties were not prejudiced is in error because other parties were not provided adequate notice of the existence of the Waiver, nor were they provided an opportunity to participate in the July 30th hearing. In addressing this assertion, the Court reviews the procedural history of SBN's motion.

SBN's initial motion for relief, (Doc. 15), which did not mention the existence of the Waiver, was served upon the Debtor and all other interested parties, and it came before the Court for hearing on June 26, 2019. No party, other than the Debtor and SBN, appeared at the hearing, and it was at this time, during oral arguments, that SBN first raised the existence of the Waiver as a factor in support of stay relief.

The initial hearing was continued to July 30, 2019. Notice of the continuance was served only on the Debtor and SBN, as these were the only parties that appeared at the initial hearing, and on the United States Trustee. (Doc. 29). Then, on July 29th, one day prior to the hearing, SBN amended its motion for relief to include the existence of the Waiver as a factor in support of its motion. (Doc. 52). The amended motion was served on all known creditors and parties in interest, but it did not provide these parties with notice of the July 30th hearing, which was scheduled to occur the next day.

At the conclusion of the continued hearing,[3] the Court took the matter under advisement and provided the parties the opportunity to file post-hearing briefs. On October 28, 2019, the Court entered its Order granting SBN relief from the stay. Prior to the entry of the Order, no party, other than the Debtor or SBN, filed a pleading in the case.

In the Order, the Court interpreted the Debtor's "waiver" argument to be that SBN had waived its right to enforce the Waiver by serving its motion for relief on the Debtor and encouraging the Debtor to participate in the resulting proceedings and negotiations. The Court found this argument unpersuasive. As for the effect on other creditors, the Court found that the absence of objection, as well as the lack of involvement in the case, by any creditor or party in interest, evidenced the lack of prejudice to these parties.

Now, it appears to the Court that the Debtor is arguing that had other parties known about the Waiver from the outset, they would have contested SBN's motion. Thus, the question is whether there is a difference between having notice of SBN's general intent to seek relief from the stay, which all parties had, and having notice specifically of the factors allegedly supporting SBN's motion. Were parties, aside from the Debtor, prejudiced in this matter to the extent that warrants reconsideration? The Court does not believe that this is the case.

---

[3] The continued hearing occurred over a two-day period, July 30th and July 31st.

It is undisputed that all parties had proper notice of the initial hearing and of SBN's intent to seek relief from the automatic stay. Regardless of SBN's amending its motion to assert the existence of another factor in support of its request for relief, the relief sought was the same, and no parties, other than the Debtor, filed any response or objection to SBN's initial motion or the amendment. Further, as of the entry of this order, no party, aside from SBN or the Debtor, not even J&A Finance,[4] has filed a pleading in the case whatsoever.

Consequently, the Court does not find that other parties were prejudiced in this regard. However, since the Court has already found that a subsequent hearing is necessary, the Court will allow other parties in interest the opportunity to present argument to the Court in regard to any suffered prejudice as a result of the alleged lack of notice.

3. The Court's Analysis of "Cause" under § 362(d)(1)

The Court found that the Waiver was valid and enforceable against the Debtor, but that this alone did not constitute cause for relief pursuant to § 362(d)(1). The Court declined to conduct further analysis or consider other case-specific factors. Upon review and reconsideration, the Court determines that it erred in this regard.

---

[4] J&A Finance asserts an interest in the Debtor's real property.

Section 362(d)(1) has a relatively broad sweep. *See NationsBank of Virginia, N.A. v. DCI Pub. of Alexandria, Inc.,* 160 B.R. 538, 540 (E.D. Va. 1993). "Cause" under § 362(d)(1) is not limited to bad faith or lack of adequate protection. *In re Shady Grove Tech Ctr. Assocs. Ltd. P'ship*, 216 B.R. 386, 388 (Bankr. D. Md. 1998). This determination falls within the discretion of the Court and is made on a case-by-case basis. *Nationsbank, N.A. v. LDN Corp. (In re LDN Corp.),* 191 B.R. 320, 323 (Bankr. E.D. Va. 1996). A court may consider the totality of the circumstances of the individual case.

Here, the Court finds that the *Piccadilly*[5] factors provide guidance as to what may constitute "cause" under § 362(d)(1). The Order recognizes that several factors favor the Debtor,[6] such as: it being the Debtor's first filing and the absence of any allegation of bad faith or improper pre-petition conduct.[7] The Debtor's proposed plan and its timeliness also arguably favor the Debtor.

However, many factors favor SBN and a finding that cause exists for granting relief. As recognized in the Order, this case is a two-party dispute that centers around the Debtor's primary asset, the real property. (Doc. 63, p. 8). SBN is the major, if not sole, secured creditor, and is the only creditor applying pressure

---

[5] *In re Phoenix Piccadilly, Ltd.,* 849 F.2d at 1394.
[6] While the Court's focus was § 1112(b) and cause for dismissal, the conclusions reached as to these factors are applicable as to whether "cause" exists for relief from the stay.
[7] The lack of allegations of improper conduct was a primary factor in the Court's conclusion that "cause" for dismissal did not exist.

on the Debtor. (*Id.*). The Debtor has few unsecured creditors and owes limited debts to non-moving creditors. (*Id.*). The Debtor filed its petition for relief on the day of a scheduled foreclosure sale. (*Id.*). Additionally, the Debtor's long history of non-payment on the debt, despite at one time having amassed a significant amount of funds for the purpose of a discounted buy out, favors a finding of cause. *See generally Nationsbank, N.A.,* 191 B.R. at 324.

Importantly, while the enforceability of the Waiver alone may not be sufficient cause for stay relief, it is a primary element in this consideration, and its enforceability strongly favors finding cause exists for relief from the stay. *In re Powers*, 170 B.R. 480, 483 (Bankr. D. Mass. 1994).

The Court also recognizes that whether the Debtor has equity in the property is an important factor in this determination. However, since this determination cannot be made until the conclusion of the subsequent evidentiary hearing, the Court declines, at this time, to reach a final decision as to § 362(d)(1) and the existence of cause.

## Conclusion

Therefore, in accordance with the foregoing, it is hereby **ORDERED** that: (1) on a date to be determined by subsequent Order and Notice, the Court shall hold an evidentiary hearing in regard to the issue of the Debtor's equity in the personal property;

(2) prior to the scheduled hearing, SBN and the Debtor shall confer and submit to the Court a Report indicating which of the Debtor's personal property is subject to SBN's stay relief motion, and any disagreement thereto; and

(3) parties in interest desiring to present to the Court arguments concerning prejudice caused by the granting of stay relief shall, no later than five (5) days prior to the hearing, file a brief with the Court sufficiently setting forth the grounds upon which its argument is based, and shall appear at the aforementioned hearing.

The Clerk is **DIRECTED** to serve a copy of this Order on the Debtor, Debtor's counsel, SummitBridge National Investments VI, LLC, SummitBridge National Investments VI, LLC's counsel, the United States Trustee, and all other parties in interest.

**END OF DOCUMENT**